**Donald J. TRUMP, Plaintiff,**

v.

**CAESARS WORLD, INC., Defendant.**

**Civ. A. No. 86–1055.**

United States District Court,
D. New Jersey.

July 1, 1986.

Ribis, McCluskey & Graham by Nicholas L. Ribis, Bruce R. Volpe, Short Hills, N.J., and Joseph Silver, Asst. Gen. Counsel, The Trump Organization, New York City, for plaintiff.

Pitney, Hardin, Kipp & Szuch by Murray J. Laulicht, Robert L. Hollingshead, Jennifer Chandler Hauge, Morristown, N.J., and Robert E. Reilert, Corp. Counsel and Secretary Caesars Atlantic City, Atlantic City, N.J., for defendant.

DEBEVOISE, District Judge.

THE COURT: Good afternoon.

What I will do is put an opinion on the record and reserve the right to review the transcript and make any corrections or changes in form which I think are needed.

The question presented in this case is whether plaintiff, Donald J. Trump, a person of renown in the real estate field, can name one of his two Atlantic City casinos "Trump's Palace" over the objections of defendant, Caesars World, Inc., which has long operated a famous casino in Las Vegas, Nevada under its trademark "Caesars Palace" and which now also operates a casino in Atlantic City called "Caesars Atlantic City."

### I. *Procedural Background*

On March 17, 1986 Trump filed a complaint seeking injunctive relief and declaratory judgment that his use of the name "Trump's Palace" would not constitute infringement of Caesars World's trademarks under the Lanham Act. Caesars World counterclaimed and moved for an order preliminarily enjoining Trump from naming his newest Atlantic City casino "Trump's Palace." The parties took extensive discovery and a hearing on Caesars World's motion was held on June 18 and 19, 1986. With the consent of the parties I ordered that the trial of the action on the merits be advanced and consolidated with a hearing

on the preliminary injunction application. F.R.Civ.P. 65(a)(2).

This opinion constitutes my findings of fact and conclusions of law.

## II. *The Facts*

A. *Caesars World.* Caesars World, through subsidiaries, is in the business of providing casino hotels and resort hotels. The most illustrious of its enterprises is Caesars Palace in Las Vegas, Nevada.

The image which Caesars Palace seeks to convey is suggested by a release (Exh. P–67) which commences: "Glittering at the heart of the Las Vegas Strip, Caesars Palace recaptures the glory that was Greece and the grandeur that was Rome in a resort casino that has become synonymous with luxury and excitement. Graced by spectacular fountains, beautiful landscaping and gleaming marble reproductions of classic statuary, Caesars Palace sits as an architectural marvel among world resorts famous for their originality and beauty."

Encompassed in this 85–acre setting is the Omnimax, a 380–seat luxury movie theater, a 243,000–gallon pool situated in The Garden of the Gods, a 28–foot jacuzzi, 1,600 luxurious rooms and suites, seven restaurants, including the Bacchanal which features a seven-course feast where exotically clad "wine goddesses" pour vintage wines from shoulder height and Cleopatra's Barge, an imposing floating cocktail lounge that is a replica of the majestic ships that sailed the Nile in ancient Egypt. The purpose of all this is to attract gamblers to the casino who will contribute to the casino's "Win," i.e. the customer's loss. In addition to the physical facilities, Caesars Palace brings to its theaters and entertainment halls celebrities of show business such as Bill Cosby, Diana Ross, Joan Rivers, Julio Iglesias and The Pointer Sisters. It features sporting events such as boxing bouts and tennis matches with such stars as Muhammed Ali and John McEnroe.

The decor of Caesars Palace is informed by a so-called "Greco-Roman" theme. The name Caesars Palace and other titles and prominent words are often written in letters having a peculiar chiseled block style which is supposed to be suggestive of Roman writing. Areas in the complex are given names associated with ancient Rome. The logo on the letterhead pictures a slave girl feeding grapes to a reclining emperor.

The statues placed at strategic locations are reproductions of such works as Winged Victory of Samothrace. There was some confusion in the testimony whether one of the statues represented Julius Caesar, Caesar Augustus or Marcus Aurelius, but while Nero or Caligula might better represent the spirit of the enterprise, Caesar, Caesar Augustus and Marcus Aurelius are each indisputably Roman.

At times Caesars Palace must stretch a bit to maintain its Roman theme. One of its statues is a reproduction of Michelangelo's David, but this perhaps can be justified on the basis that the Roman Empire flourished at some mid-point between young David's slaying of Goliath in the Valley of Elah, and Michelangelo's sculpting his statue in the 16th Century. Harder to conceptualize is the linkage of the Chinese restaurant to ancient Rome. Caesars' Howard Klein made a valiant effort, testifying, "We have a story in the menu as to the connection, the ancient connection between trade between China and the Roman Empire utilizing Marco Polo as the interlock." Klein deposition at 94. No matter that the interlock Marco Polo and his uncle commenced their journey from Venice to China 800 years after the fall of the Western Roman Empire.

In addition to its ultimate creation, Caesars Palace in Las Vegas, Caesars World operates a casino-hotel in Lake Tahoe, Nevada under the name Caesars Tahoe.

In 1977 Caesars World commenced planning its Atlantic City project. It acquired the Hotel Traymore site on the Boardwalk and planned to create a facility which would merit the name Caesars Palace. Unfortunately, necessary financing was not available and the project was put on the back burner. In order to make a quick entry into Atlantic City, however, Caesars World acquired the Howard Johnson Regency property, also on the Boardwalk, and developed quickly a more modest casino hotel—so modest in fact that at the outset it was not permitted to bear either the name "Palace" or the name "Caesars." It had to commence its life under the humble appellation "Boardwalk Regency Hotel Casino." In 1981, after some upgrading was accomplished, the name was changed to Caesars Boardwalk Regency Hotel Casino.

Thereafter Caesars World invested $90 million in improvements to the Boardwalk Regency and in 1984 it was renamed Cae-

sars Atlantic City Hotel Casino. The facility still could not claim to be a Palace. That title was reserved for a future magnificent facility to be constructed on the Traymore Boardwalk site or for a more exotically constructed Caesars Atlantic City.

Since 1971 Caesars World has been the owner of trademarks and service marks used in the promotion and advertising of its casino hotels and resort properties. These trademarks are registered in the United States Patent and Trademark Office. They include "Caesars Palace" and "The Palace" and have achieved incontestable status under 15 U.S.C. Section 1065.

Caesars World has expended substantial effort both in the United States and abroad promoting its marks and marketing its various casino and resort hotel services. During the past five years it and its subsidiaries have spent approximately $8 million per year in advertising promotions and marketing efforts.

Caesars Palace advertises extensively in print, poster, broadcast media under the name Caesars Palace. It also advertises frequently using such expressions as "Play the Palace," "Plunder the Palace" and other expressions using the words "The Palace."

In addition to vigorously advertising and promoting its marks, Caesars Palace and The Palace, as applied specifically to the Caesars Palace facility in Las Vegas, Caesars World has marketed its several properties in such a way as to foster the association between Caesars Palace and the other properties. Caesars Palace, Caesars Tahoe and Caesars Atlantic City all use the same distinctive Roman-type lettering originally devised for Caesars Palace. They share joint sales offices, both domestic and international. The properties are often marketed through joint advertising pieces that describe several of the properties. In marketing the casino facilities to international clients, Caesars World has come to refer to each of its casino properties as "Caesars Palace" because that accords with the perceptions of the patrons themselves.

In fiscal 1986, in excess of $8 million has been budgeted by Caesars Atlantic City alone for advertising and promotion. In its advertising, Caesars Atlantic City attempts to benefit from what its attorneys refer to as the "halo effect" generated by Caesars Palace. There are linkages between Cae-sars Atlantic City and Caesars Palace, including: sporting events originating at Caesars Palace, which is shown in Caesars Atlantic City on closed-circuit TV; Caesars World in-house publication, Seven Magazine which is sent to 100,000 customers or potential customers of all three casino hotels and which describes the offerings of all three of them; advertisements for Caesars Atlantic City featuring comedian Buddy Hackett as Caesar in a palace, and a Roman charioteer bringing patrons to Caesars; use of the same Roman-style lettering in the word Caesars; the offer of trips to Caesars Palace as prizes in contests run at Caesars Atlantic City; installation of many Roman-type statues and other elements of decor similar to that found at Caesars Palace; use of a seal with Roman figures on stationery, matchbooks, interior signage and other items is virtually identical to the seal used at Caesars Palace; use of "Pig Latin" in radio advertising; and reliance upon joint advertising and promotion both within this country and abroad.

On some occasions the commingling of the advertising and programs of the various Caesars World casino/hotels has resulted in references by customers and entertainers to the Atlantic City facility as Caesars Palace in Atlantic City.

At its outset, in the late 1960s Caesars Palace in Las Vegas sought as customers primarily the high rollers, domestic gamblers willing to place bets of $25,000 or more and international gamblers willing to place bets of $50,000 or more. Starting in the mid–1970s a concentrated effort was made to entice the international trade through personal solicitation of customers abroad, free airplane trips and glamorous accommodations, food, drink and entertainment at the casino hotel.

In 1982 Caesars World made a policy change and its three casino hotels started making a concentrated effort to attract not only the high rollers but also the middle and lower level players. There was no change, however, in the advertising and promotional efforts to portray these facilities as luxurious, glamorous places redolent with an aura of a cartoonist's view of ancient Rome and Greece.

At Caesars Palace in Nevada the total annual "win" is $240 million, of which $40 million is represented by slot machine win and sports and race book win. The remain-

ing $200 million is in table game revenue. About 45 percent of the table game revenue comes from international customers. About 75 percent of table game win at Caesars Palace comes from domestic and international high rollers. However, about 90 percent of the individual patrons are non-high rollers.

All casinos catering to high rollers compete for the international and domestic pool of such bettors. In Atlantic City the principal competitors for the high rollers are Resorts International, Golden Nugget, Trump's facilities and Caesars.

The non-high roller customer base of Caesars Palace in Las Vegas is generally the population west of the Mississippi River. The non-high roller base of Caesars Atlantic City is generally the population coming from an area including eastern Pennsylvania, central Connecticut in the north to the Baltimore and Washington area in the south.

B. *Donald J. Trump:* Trump is a well-known entrepreneur, businessman and real estate developer. His previous and present ventures include the Grand Hyatt Hotel, Trump Plaza and Trump Tower, all of which are located in New York City, as well as the New Jersey Generals. Trump has frequently used his surname in the names of buildings and facilities he has developed and has acquired a high level of public recognition in connection with his activities. As a result, the public has come to associate large buildings and real estate projects using the name "Trump" with plaintiff in this case.

In addition to the above described ventures, Trump also owns two casino hotel operations in Atlantic City, New Jersey.

In April 1985 Trump acquired a casino hotel facility in Atlantic City from Hilton Hotels. The facility was just being completed at the time and was scheduled to open in June. Trump announced that he intended to use the word "Palace" in the name of the facility—either "The Palace" or "Atlantic City Palace," or, as Trump now claims, "Trump's Palace." Upon learning of this decision Caesars World wrote to Trump advising him of its claim of right to the exclusive use of the word "Palace" in connection with a resort casino hotel.

Trump has testified that in view of the need to move quickly to open its new casino hotel he deferred to Caesars World's demand. On May 5, 1985, through his counsel, he informed Caesars World that he would not "utilize the word 'Palace' in the business name of his casino in Atlantic City." In view of Trump's position Caesars World did not institute a legal action against him. Trump publicly announced his decision not to use the name Palace. An Atlantic City newspaper reported a Trump spokesman explaining that "the name Palace was dropped because of possible confusion with other properties, here and elsewhere, with the word "palace" in their names." (Exh. D–61). Instead he named his new facility Trump's Castle Hotel and Casino.

Since 1984, Trump also has held an ownership interest, in partnership with Holiday Inns, Inc. and its subsidiary, Harrah's Atlantic City, Inc., of a casino hotel on the Atlantic City boardwalk which has been variously named since its opening, "Harrah's at Trump Plaza," "Trump Plaza," and most recently "Trump Casino Hotel" (herein sometimes referred to as the "Boardwalk Facility"). By virtue of a transaction agreed to on March 11, 1986, and consummated on May 16, 1986, Trump has assumed complete ownership of this facility. It is located almost next door to Caesars Atlantic City.

Upon reaching agreement with his partners in the Boardwalk Facility to purchase their interests and thereby become the sole owner of that facility, Trump began to consider possible new names. In doing so he decided to return to his original preference for the word "palace" and to rename the facility "Trump's Palace," believing that the word "palace" is a term in such widespread and common use in trade names and commercial names throughout the country that it should be available to him. Recognizing Caesars World's prior claim to the contrary, however, he filed the present action seeking a court ruling, sanctioning his adoption of the name "Trump's Palace" in renaming his Boardwalk Facility.

The design for the signs which are intended to be placed on the exterior of the facility to be renamed "Trump's Palace" shows the way in which the name will be used at the facility. These signs show that the words "Trump's" and "Palace" will be in equal size letters. Although, by necessity, some of the exterior signs at the

"Trump's Castle" casino hotel have used only the word "castle," modifications have been planned and approval obtained from the City of Atlantic City to change the signs to read "Trump's Castle" (except where space limitations prohibit this, such as on top of the tower of the building).

The Trump name is synonymous in real estate circles with luxury, opulence, lavishness. The combination of the name with Palace is designed to create an image which will attract the kind of people who are drawn to casinos.

Trump's Boardwalk Facility will seek out all kinds of customers—both high rollers and gamblers whose bets are at more modest levels. The emphasis, however, will be on high rollers. At trial Trump was unable to state whether the operators of his casinos have sent emissaries abroad as Caesars World has done, to seek the patronage of the international gambling set, but it is reasonable to conclude that if the Boardwalk Facility has not yet done so it will in the future.

### Conclusions of Law

A. *Jurisdiction:* The Court has jurisdiction by virtue of 28 U.S.C. Section 1338 and 15 U.S.C. Section 1051, et seq., and by virtue of the doctrine of pendent jurisdiction.

B. *Status of Caesars World's Trademarks:* Two trademarks owned and registered by Caesars World—Caesars Palace and The Palace—are at issue in this case. The evidence establishes that these marks are incontestible under the provisions of the Lanham Act, 15 U.S.C. Section 1065, and thus constitute conclusive evidence of Caesars World's exclusive right to use the marks in connection with casino hotels unless one of the conditions or defenses enumerated in 15 U.S.C. Section 1065 or 1115(b) can be established. *Park 'n Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

Absent the existence of such a condition or defense under Section 32(1) of the Lanham Act, 15 U.S.C. Section 1114(1), Trump would be subject to injunctive and other relief for use of a colorable imitation of Caesars World's trademarks in connection with a promotion of his casino hotel if there is a likelihood of confusion, mistake or deception. Similarly, under Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a) and the common law of New Jersey, relief may be granted if there is a tendency to deceive or a likelihood of confusion, *e.g.*, *American Greetings Corp. v. Dan-Dee Imports, Inc.*, 619 F.Supp. 1204 (D.N.J.1985).

C. *Generic Nature of the Marks:* Trump's first contention is that "Palace" as used in connection with hotel and casino services is a generic term signifying an establishment offering luxurious accommodations and entertainment rather than signifying the origin of such services.

Trump points to the wide use of "palace" for all manner of restaurants, hotels, bars and food suppliers, e.g., Beef Palace, Carl's Potato Palace, Brothers Pizza Palace, Caesars Palace, Imperial Palace Hotel and Casino, Palace Hotel Lucerne, The Poker Palace. He submits the report of a lexicographer and linguist Lawrence Urdang who concludes "that palace used in the name of establishments of any kind is generic and hence free of any encumberances that may be occasioned by any and all claims to the contrary." (Report at 12; Exh. P–23(a). Dr. Urdang defines "palace" as "a grand or stately building sometimes gaudily decorated, fitted up as a place of public amusement, entertainment, refreshment, or accommodation. Report at 11; Exh. P–23(a). This, according to Dr. Urdang, is a metaphoric extension of the word palace from its original meaning and is widely accepted by writers and speakers in England and America.

I conclude that in the contest between the linguistic experts, Caesars World's expert William A. Stewart has the better of the argument. (Report, Exhibit D–83A). He points out that invariably when a writer or speaker intends to use "palace" in a sense urged by Trump's counsel, a modifying adjective or noun is employed in connection with "Palace" in order to transform the primary meaning of "Palace" to the metaphorical one, e.g., Palace *Club*, Palace *Hotel*, Crystal *Palace*, Dairy *Palace*.

Dr. Stewart takes issue with Dr. Urdang's conclusion that palace, without more, means place of public entertainment or accommodation and thus is a generic term for hotel or casino. Using dictionary references, Dr. Stewart persuasively demonstrates that none of the dictionary definitions of palace and accommodation justify Dr. Urdang's conclusion that palace is a generic word for accommodation.

The primary definition of palace is virtually the same in all the dictionaries to which the Court was referred. The Oxford English Dictionary is a fair example: "The official residence of an emperor, king, pope or other sovereign ruler." This is the literal meaning of the word, and in Dr. Stewart's opinion one hearing the word "palace" alone is likely to give it a literal meaning. Mr. Stewart tested his opinion by reading two sentences to a group of students, each sentence containing the word "palace." (i) "I'm flying there tomorrow, and I'll spend the night in a palace and return the next day" and (ii) "I lost some money in a palace last week." Asked to make up a story based on these sentences, each student interpreted "palace" in its literal sense.

Examination of the exhibits depicting Caesars World's advertising supports Dr. Stewart's ultimate conclusion that "Palace" retains its literal meaning when used alone and is not the equivalent of hotel or casino. Since Caesars Palace is not the official residence of a sovereign the use of "palace" in connection with a casino hotel is arbitrary and fanciful and capable of identifying the source of the services offered.

A generic term is one that refers to the genus or class of which the particular product is a species. *See Park 'n Fly, supra,* 469 U.S. at 193, 105 S.Ct. at 661, 83 L.Ed.2d at 587.

A generic term provides no indication of the product's source and "is commonly used as the name or description of a kind of goods." *Miller Brewing Co. v. G. Heileman Brewing Co.,* 561 F.2d 75, 79, (7th Cir.1977), *cert. denied* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978).

Neither Caesars Palace nor The Palace are generic as the courts have defined that term.

The next question is whether in fact these marks have come to identify Caesars World as the source of the services provided under the two trademarks. Two categories of evidence demonstrate that the marks do identify the source of the services not only in Las Vegas but also to a lesser extent in Atlantic City.

First there is the evidence of the very extensive advertising and promotional activities of Caesars World in which it promotes its casino hotel activities both nationally and internationally under the names "Caesars Palace," "The Palace" and "Caesars."

These advertising and promotional efforts relate to the casino hotels located in Las Vegas, Lake Tahoe and Atlantic City. In the process the words "Caesars" and "Palace" and "Caesars Palace" have come to identify in the minds of the gambling public the casino and hotel services furnished by Caesars World. Even though the word "palace" is not part of the name of the Atlantic City Casino, to some extent at least the Atlantic City gambling public identifies the name Palace with that casino. The international trade uses the name Caesars and Palace to refer to all three of the United States casinos operated by Caesars World.

The other kind of evidence showing an association between the word "palace" and Caesars World's facility in Atlantic City is the survey which Caesars World commissioned Admar Research, Inc. to take in Atlantic City in April and May of 1986.

The purpose of the first survey was to determine the meaning to consumers of the word "palace". 299 interviews were conducted with male and female heads of a household who were visiting Atlantic City and who made at least one other visit during the past year to any United States or foreign city that had legal gambling. The respondents were asked for the meaning of the word "palace" and were then asked whether they ever heard of the word "palace" as part of the name of a casino hotel and, if so, what was the full name of the casino using "palace" as part of its name.

When hearing the word "palace," the first thing that came to the consumers' minds was royalty/regal, (19.3 percent), Caesars (12 percent), luxury/money (12 percent), home/house/residence (9.3 percent), Trump's (3.7 percent). After probing for additional meanings of the word "palace," a total of 34.7 percent made a royalty/regal association, 27.4 percent cited luxury/money, 18.7 percent gave a home/house/residence as their answer, 14.7 percent referred to Caesars and 5 percent referred to Trump's. When specifically asked if they ever heard the word "palace" as part of the name of a casino hotel, 45.8 percent mentioned Caesars and 11.4 percent cited Trump's.

This survey tends to negate Trump's contention that "palace" is a generic term for

accommodation and tends to support the contention that in the context of gambling activity in general palace is indicative of a source of such services. "Caesars" is clearly the stronger identifying element of the trademark, but to a significant degree palace alone is associated in consumers' minds with Caesars and casino gambling.

The second survey pointed to the same conclusions. Its objective was to determine the full name associated with "Caesars" and three other casinos—Trump's, MGM and Bally's. 298 different persons of the same categories as those who participated in the first survey were interviewed. Respondents were asked to recall names of Atlantic City and Las Vegas casino hotels who were also shown cards containing the names Caesars, Trump's, MGM and Bally's and were asked to complete the names of each one.

When asked to name Atlantic City casino hotels, 67.1 percent mentioned "Caesars" and 3.7 percent specifically referred to "Caesars Palace." When asked to name Las Vegas casino hotels, 44 percent were aware of "Caesars" and 8.4 percent specifically mentioned "Caesars Palace."

After being shown a card containing the word "Caesars" and asked to complete the name of that casino hotel, 56.7 percent replied "Palace." By comparison 28.9 percent associated "Castle" with "Trump's," 32.6 percent associated "Park Place" with "Bally's" and 25.2 percent associated "Grand" with "MGM". It can be seen that among likely gambling consumers in Atlantic City the link between "Palace" and "Caesars" is substantially higher than the name association of the three other casino hotels included in the survey.

Thus "Caesars Palace" and "Palace" are not only fanciful, nongeneric names when used in conjunction with casino hotels, they achieve a significant role as the identification of source even in Atlantic City where as yet the word "Palace" is not formally used in the official name of Caesars casino hotel. This conclusion is in accord with holdings in earlier cases which found Caesars Palace to be a strong trademark. See *Caesars World, Inc. v. Caesars Palace,* 490 F.Supp. 818 (D.N.J.1980) and cases cited therein.

Although Trump attacked the methodology and conclusions of Caesars' surveys, I find these attacks unpersuasive and find that the surveys are a good measure of the significance of the marks "Caesars Palace" and "The Palace" in the minds of the gambling consumer in Atlantic City and elsewhere.

D. *Likelihood of Confusion:* Caesars World has established that its trademarks "Caesars Palace" and "The Palace" as applied to casino hotels are not generic and are valid. It is necessary to determine whether Trump's adoption of the name "Trump's Palace" for his casino hotel in Atlantic City is likely to cause confusion, mistake or deception. In *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225 (3d Cir.1978) the Court set forth ten factors to be considered in determining whether the potential for confusion exists.

(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the scope of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised in the same media; (8) the extent to which the targets of the parties sales efforts are the same; (9) the relationship of the goods in the minds of the public because of a similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market.

*Id.* at 1229.

At first blush the similarity between Caesars World's marks and Trump's proposed name seems nonexistent. Caesars Palace contains the strong word "Caesars" and Trump's Palace contains the strong word "Trump," serving to distinguish it from both Caesars Palace and from any facility called simply "The Palace." Moreover, in Atlantic City where Trump's Palace will be located Caesars World's casino hotel is presently named Caesars Atlantic City Casino Hotel without any reference whatsoever to "Palace." Without more, these facts would end the inquiry about confusion.

However, there is other evidence which complicates the initial impression. As de-

scribed in the statement of facts Caesars World's promotional and advertising efforts have had the intent and effect of linking in the gambling public's mind the three Caesars World casinos in the United States. The word "Caesars" is associated with the word Palace, and vice versa, not only in Las Vegas where Palace appears in the name of the facility, but also in Atlantic City where it does not. The surveys show that in Atlantic City consumers tend to associate the word "palace" with Caesars World's casinos. Approximately 30 percent of the mail from the public addressed to Caesars Atlantic City is in fact addressed "Caesars Palace, Atlantic City, New Jersey." International customers do not distinguish between the names of the three casinos and often refer to each simply as Caesars Palace. Thus the effect of Caesars World's extensive advertising and promotion using the Caesars Palace mark and emphasizing the word "palace" with respect to all of the casinos is to create a subliminal effect identifying Caesars with palace and palace with Caesars, see *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*, 486 F.Supp. 414 (S.D.N.Y. 1980).

Inevitably many persons will shorten the proposed Trump name to the "Palace." Trump's Castle is often referred to as the "Castle" and a large billboard adjacent to a highway leading into Atlantic City erected by Trump's sets forth the name "Castle" in huge letters and sets forth the name "Trump" in such small letters that they would not be likely to be observed by the occupants of vehicles passing by. Since there will be two Trump's casino hotels in Atlantic City, the most likely way to distinguish between them is to call one the Castle and the other the Palace. When the Boardwalk Facility is referred to as the "Palace" there will be a similarity between Trump's casino's name and Caesars Worlds' two trademarks.

The use of Caesars Worlds' marks has already been described—both their use in Las Vegas and their derivative use and association in Lake Tahoe and Atlantic City and wherever else Caesars World advertises and promotes its casino hotels.

Trump and Caesars World are offering almost an identical product in luxurious and opulent facilities almost next door to each other on the Atlantic City Boardwalk. Each makes an intensive effort to procure high rollers in the United States and abroad, and each also seeks to attract the medium and low level gamblers. The testimony of Caesars Worlds' executives expressed concern that international customers in particular who are not fluent in the English language will be confused both overseas and upon their arrival in the United States if two casino hotels incorporating the word palace are soliciting their patronage. It seems unlikely that persons physically present in Atlantic City will be unable to distinguish between a Trump's Palace with its own distinctive decor and a Caesars Atlantic City with its pseudo Greco-Roman style and related grotesqueries. However, despite the words "Caesars" and "Trump's," some customers might well conclude that there was an identity of ownership or management by reason of the common use of the word "palace." Moreover, both enterprises will be flooding the gambling market with newspapers, radio and television advertising and with all manner of other promotional endeavors. Already there is frequent use of the word "Palace" in Caesars Worlds' advertising and promotion and if Trump uses the name "Palace" in his newest casino venture he must inevitably make extensive reference to his Palace as distinguished from his Castle. Confusion as to whose Palace is the source of the advertising would be highly likely.

Trump has just started using the name "Palace" in connection with his Boardwalk facility and thus the lack of evidence of actual confusion is not significant.

However, Trump points to the wide use of the word "Palace" as a name or trademark in connection with all manner of businesses and in particular in connection with hotels, restaurants, nightclubs and theaters. Most of these uses have no relevance to the present case. We are dealing here only with a mark used in conjunction with a casino hotel, a very distinctive kind of enterprise in which Caesars Atlantic City and Trump's Boardwalk facility are typical. The fact that "Palace" is registered as a trademark or used as a name in other fields does not affect the validity of the mark in the particular field at issue here, nor does such use have much relevance on the issue of confusion.

Of greater pertinence is Trump's evidence concerning the Imperial Palace Casino which is in the casino hotel business and

which is located directly across the street from Caesars Palace in Las Vegas. The facility has 1500 rooms consisting of 392 suites and 1108 standard hotel rooms. 500 rooms are being added. Gaming operations include 5 crap games, 3 roulette games, 40 Black Jack games and 835 slot machines. There are approximately 42,000 square feet of casino space with an additional 5,000 square feet being added. The Imperial Palace has five restaurants.

The Imperial Palace had been operating under that name for many years. When Caesars World acquired its Las Vegas facilities in 1969 it dealt exclusively with high level players and the Imperial Palace sought to attract lower and middle level players. Thus until 1982 when Caesars Palace began catering to lower and middle level players as well as high rollers, there was little if any competition between the two casino hotels. Since 1982 when the competition developed there has been no evidence of confusion by customers in Las Vegas. This can be attributed to the long standing separate identities of the two facilities, the markedly different physical appearance of the two structures and the fact that Caesars Palace still places its greatest emphasis upon high rollers, a group which apparently the Imperial Palace does not aggressively seek. In view of Imperial Palace's prior use of its name in the low and middle level gamblers' groups and in view of the factors which mitigate against confusion, Caesars World never sought to enjoin Imperial Palace from use of its name. This inaction does not preclude Caesars World from seeking relief in the present case, *e.g., Kinark Corp. v. Camelot, Inc.*, 548 F.Supp. 429, 443 (D.N.J.1982). The simultaneous use without confusion of the names Caesars Palace and Imperial Palace for Las Vegas casino hotels, however, does support my conclusion that it is unlikely that on-the-spot customers in Atlantic City would confuse the Trump and Caesars World Boardwalk facilities if Trump's facility were named Trump's Palace. Rather, as I have noted, the confusion would arise if promotional material using the word "Palace" were issued by each entity. Quite likely potential customers would be uncertain about which Palace was referred to. Similarly international customers might well be confused about the particular Palace to which they were being recruited. This is so because Caesars

World and Trump are seeking the same kind of clientele and have the same kind of casino hotel. Each is quite similar to each other in these respects and each is quite different in these respects from the Imperial Palace.

The other gambling establishments which use "palace" in their names are so different from either Caesars Palace or Trump's facilities that the absence of confusion between them and Caesars Palace has little relevance in the present case.

I don't believe Trump intended to purloin Caesars World's good will when he selected the word Palace for his Boardwalk facility. His testimony showed that he had great confidence in the drawing power of the name "Trump" alone and quite evidently believes that no word could add to its luster and drawing power. He simply considered Palace an attractive supplement further suggestive of opulence, luxury and pleasure. But notwithstanding his intent, the effect of his use of the name palace would be to acquire for his casino some of the good will which Caesars World has created for its trademarks.

Turning to the seventh, eighth and ninth factors listed in the *Scott Paper Co.* case, the services which Caesars World and Trump are offering in Atlantic City are virtually identical, they are or in the future will be marketed in the same advertising media and by the same kinds of promotional efforts and the targets of their advertising and promotional efforts are the same—international and domestic high rollers from anywhere in the world and low and mid level bettors from a similar geographical area. Over the years Caesars World succeeded in identifying itself with its marks, Caesars Palace and The Palace. Use of the name "palace" by Trump would not be accomplished without frequent intensive use of the word "palace" in his own advertising and promotional efforts. It is highly likely that confusion would be engendered between his palace and Caesars facilities.

Thus considering all the factors pertinent to the case I conclude that Caesars World has established a likelihood of confusion and mistake and has proved the elements of both trademark infringement and unfair competition.

E. *Relief to be Granted:* Were this proceeding treated as an application for a pre-

liminary injunction, I would order such relief. From Caesars World's perspective, Trump's use of the name Palace would deprive it of the good will which it has developed during the past decade or so. From Trump's perspective, he has not used "Palace" extensively in connection with his Boardwalk Facility, and his limited use was made with knowledge that it was under challenge in this proceeding. He already has plans for an alternative name in the event of an adverse decision. From the perspective of the affected public-casino aficionados—it is in their interest to know to what casinos reference is being made in advertisements and promotional material.

However, the proceeding is being treated as a final hearing. I have found that Caesars World owns the valid trademarks "Caesars Palace" and "The Palace" as used in connection with casino hotels. I have found further that Trump's use of the word "palace" in the name of his Atlantic City casino hotel is likely to cause confusion. Such confusion constitutes irreparable injury to Caesars World and its consequences cannot be fully compensated by money damages. Therefore Trump should be enjoined from use of the word "Palace" in the name of his Boardwalk Facility.

Caesars World's attorneys are requested to submit an appropriate form of order implementing this opinion.

All right. Thank you. There we are. Good.

MR. LAULICHT: Thank you very much, your Honor.