NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**PURE & SIMPLE CONCEPTS, INC.,**
*Appellant*

**v.**

**I H W MANAGEMENT LIMITED, DBA FINCHLEY GROUP,**
*Appellee*

_____

2020-1211

_____

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91234659.

_____

Decided:  May 24, 2021

_____

THOMAS D. ROSENWEIN, Rosenwein Law Group, Chicago, IL, for appellant.

ERIK JAMES DYKEMA, Joshpe Mooney Paltzik LLP, New York, NY, for appellee.  Also represented by EDWARD A. PALTZIK.

_____

Before MOORE, *Chief Judge*\*, REYNA and CHEN, *Circuit Judges*.

REYNA, *Circuit Judge*.

Pure & Simple Concepts, Inc. appeals the decision of the Trademark Trial and Appeal Board to dismiss its opposition proceeding against I H W Management Limited, d/b/a The Finchley Group. The Board found that there was no likelihood of confusion between Pure & Simple's various INDUSTRY marks and Finchley's BLUE INDUSTRY mark and that there was no dilution of Pure & Simple's mark. Accordingly, the Board dismissed both claims. For the reasons stated below, we affirm.

BACKGROUND

Pure & Simple Concepts, Inc. ("P&S") owns various registered trademarks, eight of which are relevant for purposes of this appeal. P&S licenses the eight trademarks to the Manhattan Group. The Manhattan Group designs, manufactures, and distributes apparel in North America, such as shirts, pants, swimsuits, outerwear and accessories for many age groups. All eight of P&S's trademarks use the word "INDUSTRY."[1] P&S's products have been offered

---

\*    Chief Judge Kimberly A. Moore assumed the position of Chief Judge on May 22, 2021.

[1]    INDUSTRY BY WORK WEAR, Registration No. 2118102 (granted Dec. 2, 1997 with a first use date of October 1996); INDUSTRY UNION MADE PRODUCT and Design, Registration No. 2326074 (granted Mar. 7, 2000 with a first use date of October 1998); INDUSTRY GIRL, Registration No. 2403592 (granted Nov. 14, 2000 for with a first use date of January 1999); INDUSTRY SUPPLY CO. and Design, Registration No. 2446522 (granted Apr. 24, 2001with a first use date of March 1996); INDUSTRY and Design, Registration No. 2723120 (granted Jun. 10, 2003 with a first use date of March 1996); INDUSTRY and

through various channels of trade, including independent sales representatives, online offerings and websites, social media, and a number of other publications in the United States.

On April 30, 2015, I H W Management Limited, d/b/a The Finchley Group ("Finchley") filed an application to register the standard character mark BLUE INDUSTRY for a variety of clothing. On May 18, 2017, P&S opposed the registration of Finchley's mark before the Trademark Trial and Appeal Board ("Board") under Subsection 2(d) of the Lanham Act, codified in relevant part at 15 U.S.C. § 1052(d), and Subsection 43(c) of the Lanham Act, codified in relevant part at 15 U.S.C. § 1125(c), on the grounds of likelihood of confusion and likelihood of dilution by blurring based on its previously used and registered collection of INDUSTRY marks.

On November 26, 2019, the Board dismissed P&S's opposition, finding that P&S failed to prove likelihood of confusion by a preponderance of the evidence under Subsection 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).[2] J.A. 22. In addition, the Board found that P&S failed to

---

Design, Registation No. 2859863 (granted Jun. 10, 2003 with a first use date of January 2003); INDUSTRY and Design, Registration No. 3407934 (granted Apr. 8, 2008 with a first use date of December 19, 2006); and INDUSTRY and Design, Registration No. 5052618 (granted October 4, 2016 with a first use date of February 27, 2015). J.A. 2–6.

[2] Subsection 2(d) of the Trademark Act prohibits registration of a mark that "[c]onsists of or comprises a mark which so resembles a mark in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." *See also* 15 U.S.C. § 1052(d).

establish the critical element of fame for dilution purposes because there was no evidence that any of P&S's marks rose to the level of consumer recognition as a household name. The Board decided it did not need to consider the other factors. J.A. 26. Thus, the Board dismissed P&S's dilution claim under Sections 13 and 43(c) of the Trademark Act. *See* 15 U.S.C. §§ 1063 and 1125(c).

P&S now appeals the Board's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

STANDARD OF REVIEW

This court reviews legal conclusions of the Board de novo and factual findings for substantial evidence. *In re Pacer Tech.*, 338 F.3d 1348, 1349 (Fed. Cir. 2003). Likelihood of confusion constitutes a legal determination based on underlying findings of fact. *Id.*; *StonCor Grp., Inc. v. Specialty Coatings, Inc.*, 759 F.3d 1327, 1331 (Fed. Cir. 2014). "When a party opposes registration because it believes the mark proposed to be registered is too similar to its own, the Board evaluates likelihood of confusion by applying some or all of the 13 factors set out in [*DuPont*]." *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 144 (2015) (citing *In re E. I. Dupont de Nemours & Co.*, 476 F.2d 1357 (C.C.P.A. 1973). Each of the *DuPont* factors presents a question of fact, which we test for substantial evidence when called into question on appeal. *Omaha Steaks Int'l v. Greater Omaha Packing Co.*, 908 F.3d 1315, 1319 (Fed. Cir. 2018). Varying weight may be assigned to each *DuPont* factor depending on the evidence presented. *See Citigroup Inc. v. Capital City Bank Grp. Inc.*, 637 F.3d 1344 (Fed. Cir. 2011); *In re Shell Oil Co.*, 992 F. 2d 1204, 1206 (Fed. Cir. 1993) ("[T]he various evidentiary factors may play more or less weighty roles in any particular determination.").

## DISCUSSION

### I

P&S contends that the Board erred in dismissing its opposition for the following reasons: (1) it did not consider all relevant *DuPont* factors pertaining to a likelihood of confusion analysis; (2) it incorrectly determined the first word of Finchley's mark, "BLUE," to be the dominant term; (3) it relied on third-party registrations that were either not shown to be in use or were inapposite; and (4) it failed to credit the renown of P&S's family of marks. Appellant's Br. 2–3.

### A

With respect to P&S's first argument that the Board did not consider all factors pertaining to a likelihood of confusion analysis, P&S specifically alleges the Board failed to consider the marketplace impression of the marks at issue upon likely consumers of both P&S's and Finchley's nearly identical clothing goods. Appellant's Br. 17. P&S argues that because the clothes at issue are inexpensive and the consumers are purchasing clothing for everyday wear, they are more inclined toward "impulse" buying, and, thus, are more likely to be confused between P&S's and Finchley's marks. Finchley contends this goes to the *Dupont* factor 4, having to do with the "conditions under which and buyer to whom sales are made," *DuPont*, 476 F.2d at 1361, and that P&S presented no evidence on this factor.

The Board must consider each relevant DuPont factor for which there is evidence and argument. *In re Guild Mortg. Co.*, 912 F.3d 1376, 1380 (Fed. Cir. 2019). On the other hand, "federal appellate courts do not consider issues 'not passed upon below' or entertain arguments not presented to the lower tribunal." *Hylete LLC. v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1174 (Fed. Cir. 2019) (citing *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008)). "Absent exceptional circumstances,

a party cannot raise on appeal legal issues not raised and considered in the trial forum." *Id.* (citing *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1576 (Fed. Cir. 1991)).

Indeed, the record before us shows that P&S only presented arguments and evidence based on *DuPont* factors 1 (similarity or dissimilarity of the marks), 2 (similarity of the goods and services), and 3 (similarity of established, likely-to-continue trade channels). J.A. 223–27. Finchley presented counterarguments as to factors 1, 2, and 3, and additionally presented arguments and evidence as to factor 6 (number and nature of similar marks in use on similar goods). J.A. 251–53, 262. Neither party briefed the other factors, and P&S does not show otherwise. The Board found that factors 1 and 6 weighed against a finding of likelihood of confusion, J.A. 16–17, 19–20, and that factors 2 and 3 weighed in favor of finding of likelihood of confusion, J.A. 20–21. The Board then weighed the factors and found no likelihood of confusion. J.A. 21–22.

P&S failed to present evidence or argument regarding marketplace impression on the likely consumer or the conditions under which sales are made and the buyer to whom sales are made. Indeed, apart from argument by counsel, P&S does not cite to any evidence or support in its brief indicating the degree of care that a consumer of the parties' goods would exercise. Appellant's Br. 13–17. Even in its reply, which P&S cites in its brief before the Board, P&S does not identify any evidence presented to the Board with respect to the conditions under which sales are made and the buyer to whom sales are made. Appellant's Reply Br. 2. Instead, P&S relies on statements made by Finchley about its products being "geared toward higher end male fashion" and appealing to "fashion conscious affluent males between ages 20-45." *Id.* at 2–3. Contrary to P&S's contentions, this does not imply that P&S presented any evidence regarding the conditions under which sales are made to customers. P&S's other arguments as to the similarity of the marks at issue; the nature of the goods; and the trade

channels clearly pertain to *Dupont* factors 1, 2 and 3, not factor 4. Accordingly, we determine that P&S forfeited argument as to this factor because it was not made before the Board. J.A. 223–27. For these reasons, we cannot say that the Board erred by not considering the same. *In re Guild*, 912 F.3d at 1380.

B

The Board analyzed the similarity and dissimilarity of the marks pursuant to *DuPont* factor 1 and found that this factor weighed against finding a likelihood of confusion. J.A. 17–20. P&S contends that the Board erred in concluding that "BLUE" is the dominant term in Finchley's mark for purposes of creating the mark's commercial impression. According to P&S, BLUE could only be associated with consumers' color preferences rather than a particular brand. Appellant's Br. 14. P&S argues that "INDUSTRY" should thus be considered the dominant term in Finchley's mark because of its placement as the second word in the mark. *Id.*

The Board found that the addition of the word BLUE in Finchley's mark meant that the mark "as a whole did not bear 'striking' resemblance in appearance, sound, meaning or commercial impression to any of [P&S's] pleaded registered marks." J.A. 18. The Board found that BLUE is the lead term in FINCHLEY's mark, and it "is most likely to be impressed upon the mind of the purchaser and remembered." J.A. 19. Moreover, the Board found that a consumer would likely attribute "source identifying features" to the initial word BLUE in BLUE INDUSTRY. *Id.* We agree.

This court has held that while it is not proper to dissect a mark, "one feature of a mark may be more significant than other features, and [thus] it is proper to give greater force and effect to that dominant feature." *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed. Cir. 1983). With respect to the placement of words in a mark,

in *Palm Bay Imps., Inc. v. Veuve Cliquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1370 (Fed. Cir. 2005), this court determined that the Board was correct to refuse registration of the mark, VEUVE ROYALE, for alcoholic beverages on the basis of likelihood of confusion between the marks at issue for alcoholic beverages. This court specifically found that "VEUVE," as the first word in the mark was the "dominant feature in the commercial impression" created by the mark. *Id.* at 1372.

Here, the Board found that BLUE is the first word in Finchley's BLUE INDUSTRY mark, that color is not a claimed feature of the mark, and that not all of Finchley's products are colored blue. *See* J.A. 19. In addition, the Board noted that BLUE INDUSTRY lacked a striking resemblance to any of P&S's marks because of Finchley's use of BLUE. J.A. 18.

P&S's arguments to the contrary are unpersuasive. For example, P&S points most prominently to a district court decision in which the second word, "Palace," was found to be dominant in TRUMP PALACE and CAESER'S PALACE. *See Trump v. Caesars World, Inc.*, 645 F. Supp. 1015, 1019 (D.N.J. 1986). However, the cases to which P&S cites do not address that the Board found that in this instance, the first term BLUE in Finchley's mark was "most likely to be remembered" and a "source identifying feature[]." J.A. 19. We are not convinced by P&S's argument that BLUE could only be associated with consumers' color preferences rather than a particular brand.

We conclude that the Board's finding that BLUE was the lead term in Finchley's mark and its finding that BLUE "is most likely to be impressed upon the mind of the purchaser and remembered," is supported by substantial evidence and is not otherwise contrary to law. J.A. 19. We therefore affirm the Board's finding as to this issue.

## C

The Board found that the sixth *DuPont* factor weighed against finding a likelihood of confusion. J.A. 17. P&S argues that the Board erred by relying too heavily on third-party registrations without considering, under *Dupont* factor 6, their actual use, continuing validity, or commercial impression. Appellant's Br. 9–10; *see also In re E.I. DuPont*, 476 F.2d at 1361 ("The number and nature of similar marks in use on similar goods"). P&S specifically contends that some third-party registrations were listed twice, some have been canceled, some have no evidence of use, and some are for specialized clothing not likely to be confused with P&S's more general line of clothing. Appellants' Br. 18–19.

"[E]vidence of third-party use bears on the strength or weakness of an opposer's mark." *Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1338 (Fed. Cir. 2015). This court has held that, "The purpose of a defendant introducing third-party uses is to show that customers have become so conditioned by a plethora of such similar marks that customers have been educated to distinguish between different such marks on the bases of minute distinctions." *Omaha Steaks Int'l*, 908 F.3d at 1324 (quoting *Palm Bay Imps.*, 396 F.3d at 1374) (internal quotation marks omitted). "Third[-]party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." *Juice Generation*, 794 F.3d at 1339. "The weaker an opposer's mark, the closer an applicant's mark can come without causing likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection." *Id.* at 1338 (quoting *Palm Bay Imps.*, 396 F.3d 1373). "[E]xtensive evidence of third-party use and registrations is 'powerful on its face,' even where the specific extent and impact of the usage has not been established." *Jack*

*Wolfskin Ausrustung Fur Draussen GmbH & Co. KGaA v. New Millenium Sports, S.L.U.*, 797 F.3d 1363, 1374 (Fed. Cir. 2015) (quoting *Juice Generation*, 794 F.3d at 1339).

As the Board noted, at least 12 of the 74 certificates of registration or third-party marks presented by Finchley included examples of advertised use, and 5 of those uses were in connection with clothing. J.A. 14. The Board stated that "numerous third parties have registered or used INDUSTRY formative marks in connection with clothing items." J.A. 15. The Board concluded that the term "INDUSTRY," or the plural thereof, has been "ubiquitously registered and used to identify clothing and apparel, making it both conceptually and commercially weak" and that the scope of the marks' protection is limited. J.A. 14–15. Further, the Board found that given the "sheer volume of third-party registrations and examples of third-party use, consumers are conditioned to look for differences between INDUSTRY formative marks to determine the source of a given product and are therefore less likely to be confused." J.A. 16.

We conclude that the number of registered "industry" marks, combined with the specific examples of advertised use that were considered by the Board, are substantial evidence indicating that the sixth *DuPont* factor weighs in favor of Finchley. We therefore affirm the Board's findings as to this issue.

II

We turn next to P&S's dilution claim. The Board found that P&S did not own a famous family of marks. P&S argues that the Board erred in finding that its marks are not famous. Appellant's Br. 23–25. Specifically, P&S contends that the Board failed to credit the renown of P&S's family of marks because the Board incorrectly established that its findings as to third-party registrations precludes a finding that P&S owns a family of marks for the shared INDUSTRY element.

The seminal case defining a family of marks is *J&J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460 (Fed. Cir. 1991):

> A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner. Simply using a series of similar marks does not of itself establish the existence of a family. There must be a recognition among the purchasing public that the common characteristic is indicative of a common origin of the goods . . . . Recognition of the family is achieved when the pattern of usage of the common element is sufficient to be indicative of the origin of the family. It is thus necessary to consider the use, advertisement, and distinctiveness of the marks, including assessment of the contribution of the common feature to the recognition of the marks as of common origin.

*J&J Snack Foods*, 932 F.2d at 1463–64. Under the Lanham Act § 43(c), 15 U.S.C. § 1125(c), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. "Whether a mark is famous under the [Trademark Dilution Revision Act] TDRA is a factual question reviewed for substantial evidence." *Coach Servs. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012).

The Board found that P&S did not own a family of marks. The Board determined that the overall number of registered marks with INDUSTRY that are being used to identify clothing precluded a finding that P&S owns a family of marks for the shared INDUSTRY element. J.A. 14–15. Second, with respect to P&S's dilution claim, the Board found that the evidence presented by P&S did not prove

that its marks were famous, a critical element of a dilution claim, and therefore did not prove dilution.  J.A. 25.  The Board relied upon the affidavit of P&S's President, Ted Rozenwald, which included information regarding magazine advertisements and information concerning the sales of products associated with one or more of P&S's marks.  J.A. 24–25.  The Board also considered the trade channels and the length of time P&S's marks containing "INDUSTRY" had been in use.  The Board found that the evidence fell "far short of proving that P&S's marks are famous" especially because "there is no evidence that any of P&S's marks have risen to the level of consumer recognition as a household name."  J.A. 25 (comparing two cases before the Board finding that BLACKBERRY was a famous mark and JUST DO IT was a famous slogan).  We agree.

Because P&S does not point to any evidence it presented but that was not adequately considered by the Board, we conclude that the Board's decision with respect to P&S's dilution claim is supported by substantial evidence.

## CONCLUSION

We find that the Board's factual findings are supported by substantial evidence, and that the Board correctly determined there was no likelihood of confusion or dilution.  Accordingly, we affirm the Board's dismissal.

## AFFIRMED