49 CCPA

## The FLEETWOOD COMPANY, Appellant,
### v.
## Sylvia MENDE, Assignee of Tint 'N Set, Inc., Appellee.

### Patent Appeal No. 6744.

United States Court of Customs and Patent Appeals.

Feb. 13, 1962.

James R. McKnight, Chicago, Ill., for appellant.

Mason, Kolehmainen, Rathburn & Wyss, Walther E. Wyss, and Warren D. McPhee, Chicago, Ill., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRK-PATRICK.*

MARTIN, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board dismissing a petition by appellant for cancellation from the Supplemental Register of "TINT 'N SET" for hair treating compound.[1]

Appellant bases its petition on its prior use,[2] for hair coloring shampoo, of

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Registration No. 666,419, registered August 26, 1958.

2. The record shows and appellee does not dispute, that appellant was the prior user.

"TINTZ," registered to it for shampoo [3] and for hair rinse, hair coloring, hair color touch-up pencil and cream shampoo.[4]

Appellant's only witness was Mildred Crock, employed as a consultant on hair coloring and demonstrator for ten years by appellant's predecessor, and apparently also employed for a time by appellant. She testified that TINTZ Color Shampoo has been sold on the market by appellant and its predecessor since 1934, with total sales of approximately ten million dollars. The witness testified that approximately five million dollars has been spent on advertising of this product, the advertising having been placed in newspapers in different parts of the country, in magazines, and on television and radio.

Appellant's witness also testified that, on two different occasions, while she was demonstrating TINTZ shampoo in stores, an unidentified woman spectator charged that the product had damaged her hair. She stated that, in each case, she questioned the spectator and was advised that the product which caused dissatisfaction was a hair spray rather than a shampoo. From statements of the spectators, she concluded that they had confused appellee's TINT 'N SET, a spray which colors the hair, with appellant's TINTZ shampoo.

A third incident, occurring upon a visit in the course of her employment to a store selling TINTZ Color Shampoo, was also described by the witness. She stated that the clerk in charge of cosmetics in the store, recognizing her as "the TINTZ Color Shampoo lady," questioned her about "this TINT 'N SET your company puts out."

According to appellee's registration, its first use of "TINT 'N SET" in commerce took place in July of 1954.

Eleven registrations of trademarks for hair tinting preparations embodying the word "tint" were introduced into the record by appellee. Among the marks are "TINT 'n' GLINT" for hair rinses,[5] "TINTAIR" for home hair coloring,[6] "SPRAYTINT" for a preparation for tinting the hair,[7] and "TINTABIT" for shampoo tints.[8]

Appellant instituted these cancellation proceedings on the basis that:

"The concurrent use of registrant's alleged trademark TINT 'N SET and petitioner's trademark TINTZ on such closely related goods named herein is likely to cause confusion and deceive users and purchasers as to the origin of the goods and cause damage, loss and injury to petitioner and the purchasing public." [9]

In reaching its decision, the board referred to the word "TINT" as having "obvious descriptive significance" when applied to hair coloring preparations and took the view that the differences in the marks of appellant and appellee were sufficient to insure against any reasonable likelihood of confusion. It further held, agreeing with a contention of appellee, that the testimony of appellant's witness that persons mistook appellee's hair coloring preparations for that of appellant is incompetent as hearsay.

The primary issue is whether the use of the two trademarks on their respective goods would be likely to cause confusion, mistake or deception of purchasers. The record reveals that the marks are both used on hair tinting preparations and that they pass through the same channels of trade.

Coming then to the marks themselves, TINTZ and TINT 'N SET, they differ in sound and appearance. Furthermore,

3. Registration No. 319,402, registered November 20, 1934.

4. Registration No. 511,302, registered June 21, 1949.

5. Registration No. 586,307, registered March 2, 1954.

6. Registration No. 587,488, registered March 30, 1954.

7. Registration No. 623,754, registered March 20, 1956.

8. Registration No. 629,700, registered June 26, 1956.

9. Petition for cancelation.

one describes a sole activity, i. e., tinting the hair, while the other describes two separate activities, i. e., tinting and setting the hair. This difference in activity creates different mental impressions.

Regardless of these factors, however, appellant argues that "TINT" is the dominant feature of both marks and its use in both marks is the basis for the likelihood of confusion.

"TINT" is a common English verb meaning "to color slightly" or "to tinge." [10] In its usage here, the word describes the function of the product, i. e., to tint hair. It is apparent that appellant's mark TINTZ, a phonetic spelling of "tints," is weak as an indicator of source or origin of the goods. This weakness is confirmed by the 11 third party registrations involving the word "tint" as part of the trademark for similar goods.

The significance of third party registrations was set forth by us in Shoe Corp. of America v. The Juvenile Shoe Corp. of America, 266 F.2d 793, 46 CCPA 868, where we stated:

"In determining whether a word or syllable has a descriptive or suggestive significance as applied to merchandise it is proper to take notice of the extent to which it has been used in trademarks by others on such merchandise. If it has been frequently so used, the inference is warranted that it is not purely arbitrary; that it would be likely to be understood by purchasers as identifying or describing the merchandise itself, rather than the source thereof, and hence as having little or no trademark significance."

■ When one selects a descriptive word or a misspelling thereof as a trademark, he cannot expect the same degree of protection accorded to entirely arbitrary marks. This principle was succinctly stated by this court in Sure-Fit Products Co. v. Saltzson Drapery Co.,

254 F.2d 158, 45 CCPA 856, where it stated:

"It is unnecessary to cite the numerous other cases of this court wherein the scope to be given to weak trademarks was discussed. It seems both logical and obvious to us that where a party chooses a trademark which is inherently weak, he will not enjoy the wide latitude of protection afforded the owners of strong trademarks. Where a party uses a weak mark, his competitors may come closer to his mark than would be the case with a strong mark without violating his rights. The essence of all we have said is that in the former case there is not the possibility of confusion that exists in the latter case."

■ Furthermore, for us to grant appellant's petition for cancellation would be tantamount to giving it the exclusive use of a common English word used in its common meaning to endeavor to identify a hair tinting product. Appellant believes we should grant this exclusive right because of the vast amount of money it has spent in advertising its product by this trademark. However, under these circumstances, we cannot agree with appellant. What we stated in J. Kohnstam, Ltd. v. Louis Marx and Company, Inc., et al., 47 CCPA 1080, 280 F.2d 437, applies here. We said there:

"We will concede, arguendo, that under such circumstances, *where there is only one source* for a particular kind of merchandise over a period of time, the public might come to associate that source with the name by which the merchandise is called. But such a circumstance cannot take the *common descriptive* name of an article out of the public domain and give the temporarily exclusive user of it exclusive rights to it, no matter how much money or effort it pours into promoting the sale of the merchandise."

10. Webster's New International Dictionary, 2d Ed. (1949).

■ For the reasons above discussed, we do not believe there is a likelihood of confusion or mistake in this situation.

■ Appellant argues that this conclusion is not significant here because there was actual confusion. We do not agree that the evidence supports this contention. Regardless of the question of whether the evidence is hearsay and therefore inadmissible as contended by appellee, two of the three incidents related by the sole witness for appellant are irrelevant since even though the two customers might have been confused as indicated by the conversation which they had with the witness, they did not state that they confused TINTZ with TINT 'N SET. They could have confused TINTZ with the other hair dyeing preparation now on the market which uses "tint" as part of its trademark.[11] We cannot accept the witness's mere conclusion that TINT 'N SET was involved to prove this significant fact. The third incident which involved a clerk with whom the witness spoke, did reveal some confusion between TINTZ and TINT 'N SET but certainly this one occurrence is not sufficient reason to give appellant the exclusive use of TINT for hair dyeing preparations.

For the above reasons, we affirm the decision of the Trademark Trial and Appeal Board.

Affirmed.

WORLEY, Chief Judge, concurs in result only.

11. A witness testified that the hair coloring product known as TINTAIR is sold in drug and department stores.