940 F.2d 676
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
NATIONAL DATA CORPORATION, Appellant,
v.
COMPUTER SYSTEMS ENGINEERING, INC., Appellee.
 No. 91-1101.
 United States Court of Appeals, Federal Circuit.
 July 10, 1991.
 
 Before MICHEL, Circuit Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.
 SKELTON, Senior Circuit Judge.
 
 
 1
 This is a trademark case in which National Data Corporation (opposer) opposed the application of Computer Systems Engineering, Inc.[1] (applicant) to register NATIONAL DATACOMPUTER and design for portable data collection computer terminals. The mark is as follows:
 
 
 2
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 TABLE
 
 3
 The drawing of the mark is lined for the colors blue and gray. The opposer filed its opposition with the Trademark Trial and Appeal Board (board) of the United States Department of Commerce Patent and Trademark Office, which dismissed the opposition after a hearing. This appeal followed. We affirm.
 
 DISCUSSION
 
 4
 The opposer alleges as grounds for its opposition that prior to applicant's date of first use on May 1, 1985, of the proposed mark, opposer had used the mark NATIONAL DATA CORPORATION for electronic data processing services--namely, collecting, storing, retrieving, handling and reporting business information; that it is the owner of a registration for this mark for these services; that the mark NATIONAL DATA CORPORATION is frequently abbreviated to NATIONAL DATA; and that applicant's mark for its goods so resembles opposer's mark for its services as to be likely to cause confusion or mistake or to deceive. Applicant has denied the allegations.
 
 DECISION
 
 5
 The board found that opposer has continuously used the name and mark NATIONAL DATA CORPORATION since 1967 and has made it of record by registration. It uses its mark for marketing services, such as credit card verification, corporate financial services relating to reports of bank deposits, health care activities involving automated medical information and insurance claims. It operates computer terminals and also voice centers for telemarketing services. Terminals of opposer are sometimes supplied by it to its customers and on other occasions it furnishes leased terminals manufactured by other companies. It does not sell terminals apart from its services. It does one-third of all credit card authorizations in the United States and 65 per cent of the market in cash management services. It is the leading provider of health care pharmacy electronic services, and does virtually all non-AT & T operator services in the communications area. The advertisement expenditures of opposer ranged from $400,000 in 1986 to $1.2 million in 1989.
 
 
 6
 The applicant manufactures and sells data collectors, including hand-held programable data collectors designed by it in 1983-1984. It chose the word DATACOMPUTER to identify its product, and began selling it in 1985. This device is used by retail stores in taking inventory and to communicate orders directly to the home office data processing system. It is frequently used as a part of a larger computer system. Supermarkets are some of its largest customers. It sells its product through direct sales and through resellers to retail stores. Promotion is done through computer and manufacturing oriented trade magazines and at trade shows.
 
 
 7
 The board found from these facts that although opposer's services and applicant's product both involve data collection, there are specific differences between the data collection computer terminals specified in applicant's application and the computer terminals used for the rendering of opposer's services. For example, applicant's terminals are portable, while opposer does not use portable terminals. Also, the data collected by portable terminals is different from the business information collected by opposer in the course of rendering its data processing services. Furthermore, opposer markets data collection services, while applicant sells a product, which is a hand-held data collector. Applicant is not a service company and does not operate a service business. Thus, the marks of the parties are used for different purposes. The board held on these facts that there was little likelihood of confusion among purchasers of opposer's services and applicant's product.
 
 
 8
 The board also found that opposer's services and applicant's product are purchased by sophisticated purchasers who study the services and the product extensively before purchasing. Because of this sophistication of the purchasers, there is not likely to be any confusion. Also, the facts show that opposer and applicant promote their respective services and product in different ways by directing their advertising to different media, trade shows and markets. This lessens any likelihood of confusion.
 
 
 9
 The opposer produced one witness at the hearing in support of its claim that applicant's mark resulted in actual confusion with opposer's registered mark. The witness was employed by a company that writes opposer's insurance, and she testified that when she saw an advertisement of applicant in a computer magazine she thought it might refer to the business activity of opposer. The board held that this isolated instance was speculation that could not be considered as evidence of actual confusion in the marketplace. See Amica Mutual Ins. Co. v. R.H. Cosmetics Corp., 204 U.S.P.Q. 155, 163-164 (TTAB 1979); and ITT Corp. v. XTRA Corp., 225 U.S.P.Q. 723, 729 (D.Mass.1985).
 
 
 10
 The facts show that opposer's registered mark of NATIONAL DATA CORPORATION contains the commonly used word NATIONAL and the highly suggestive or descriptive word DATA. Marks containing words like these are generally considered as weak marks that are afforded less protection than that accorded an arbitrary or coined mark. In re Hunke & Jochheim, 185 U.S.P.Q. 188, 189 (TTAB 1975); and Sure-Fit Products Co. v. Saltzon Drapery Co., 117 U.S.P.Q. 295, 297 (CCPA 1958).
 
 
 11
 Finally, the board found that notwithstanding the fact that opposer has had great success under its marks and is known and recognized in its field of data processing services, this does not mean that consumers would associate NATIONAL DATACOMPUTER and design for portable data collection computer terminals with opposer, in view of the differences in the services and goods, the differences in their marketing, the weakness of the terms of the marks, and the differences in the marks as a whole.
 
 
 12
 The findings of the board are not clearly erroneous and are fully supported by the record. Under these circumstances the findings of the board are binding on this court. Weiss Associates v. H.R.L. Associates, Inc., 902 F.2d 1546, 1547 (Fed.Cir.1990); and Stock Pot Restaurant Inc. v. Stockpot, Inc., 737 F.2d 1576, 1578 (Fed.Cir.1984).
 
 
 13
 We agree with the board that there was no likelihood of confusion in the marketplace between the marks of the parties. The decision of the board dismissing the opposition is affirmed.
 
 
 
 [1]
 Computer Systems Engineering, Inc. has been merged into National Datacomputer, Inc., which is the surviving corporation