THIS DISPOSITION
IS CITABLE AS
PRECEDENT OF
THE TTAB

Mailed:
6 July 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Vanilla Gorilla, L.P.

_____

Serial No. 76561135

_____

Anthony M. Keats of Keats McFarland & Wilson LLP for
Vanilla Gorilla, L.P.

Jennifer Chicoski, Trademark Examining Attorney, Law Office
101 (Ronald R. Sussman, Managing Attorney).

_____

Before Grendel, Drost, and Kuhlke, Administrative Trademark
Judges.

Opinion by Drost, Administrative Trademark Judge:

On November 20, 2003, applicant[1] applied to register

the mark shown below in standard character form on the

Principal Register for "automobile parts, namely, car wheel

rims" in Class 12.[2]

---

[1] The original applicant was identified as Jesse James. On June
5, 2006, the Office recorded an assignment of the application to
Vanilla Gorilla, L.P., a limited partnership composed of 2002
Jesse James Family Trust and Way Fast Whitey, Inc. Reel/Frame
No. 3321/0617.

[2] Serial No. 76561135. The application is based on applicant's
allegation of a bona fide intention to use the mark in commerce.

3-O'S

The examining attorney refused registration under Section 2(e)(1) of the Trademark Act on the ground that applicant's mark is merely descriptive of the identified goods.  15 U.S.C. § 1052(e)(1).

The examining attorney argues (Brief at p. 3, footnote omitted) that:

> The mark "3-O'S" immediately conveys a specific, descriptive meaning within the context of the field of car wheel rims.  The mark itself is comprised of the numeral "3" combined with the plural literal notation "O'S."  The letter "O," apart from its significance as the fifteenth letter of the modern English alphabet, is also understood to indicate the number "0" or zero…

> When the significance of the mark "3-O'S" is considered within the context in which it will be used, namely on "car wheel rims," the average purchaser of such goods in the market place would immediately understand the mark's reference to a specific characteristic of the goods – their diameter size in inches.

In addition to attacking the examining attorney's evidence, applicant argues (Brief at 4) that:

> Contrary to the Examining Attorney's assertion in Office Action No. 2 that "applicant's use of the hyphen between the numeral '3' and the 'O' does not create a significant distinction that results in a term with a separate non-descriptive meaning apart from the numeric designation '30s' without the hyphen," applicant respectfully disagrees.  Whereas the term "30s" can mean any number between 30 and 39, the term "3-O'S" carries the additional suggestive connotation of three circles, or three "O"s, which can refer to dragsters or funny cars with three wheels.

2

When the examining attorney made her refusal final, this appeal followed.

We must now decide whether the term "3-0'S" is merely descriptive of car wheel rims.

> A mark is merely descriptive if it immediately conveys information concerning a quality or characteristic of the product or service. The perception of the relevant purchasing public sets the standard for determining descriptiveness. Thus, a mark is merely descriptive if the ultimate consumers immediately associate it with a quality or characteristic of the product or service. On the other hand, if a mark requires imagination, thought, and perception to arrive at the qualities or characteristics of the goods or services, then the mark is suggestive.

In re MBNA America Bank N.A., 340 F.3d 1328, 67 USPQ2d 1778, 1780 (Fed. Cir. 2003) (citations and internal quotation marks omitted). See also In re Nett Designs, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) and In re Abcor Development Corp., 588 F.2d 811, 200 USPQ 215, 217 (CCPA 1978). It is clear that when we are analyzing a mark to determine if it is merely descriptive, we must consider the mark in the context of the identified goods or services and not in the abstract. Abcor, 200 USPQ at 218.

We begin by looking at the context in which the mark "3-0'S" is intended to be used. Weiss Noodle Co. v. Golden Cracknel and Specialty Co., 290 F.2d 845, 129 USPQ 411, 414 (CCPA 1961) ("In deciding whether the mark registered is in fact the name of the product, we look to the description of

the products in the registration, not to the registrant's market practices"). Applicant has identified its goods as car wheel rims. The evidence shows that car wheel rims are referred to by the number describing their diameter. An article in the *Detroit Free Press* (August 3, 2003) provides some basic information. It explains that "Rims" are: "[a]nother name for wheels. Rims are not to be confused with wheel covers or hub caps. Tires are mounted around the rim." The article defines "20s" as follows: "If someone says they are riding on 20s, they are driving a vehicle with 20-inch wheels. Many vehicles operate on a standard of 15-inch wheels, but 20s are a very popular size nationally." Similarly, "24s" are defined as "24-inch wheels. This is the size that's popular everywhere this summer." The article quotes an interviewee as saying that: "Rappers talk about their cars and rims on the radio and you can see them in the videos. I think that is why they have taken off."

An article at www.sema.org describes the aftermarket for rims as follows:

> Wheels are getting absurdly large. There was a time when 20s were huge; now 20s are almost commonplace. The Dodge Ram pickup comes from the factory with 20s on it, and now you're seeing 26s at the SEMA Show. We understand that GM is now voiding warranties in vehicles that have 22s on them.

Ser. No. 76561135

The examining attorney also submitted evidence of use of the term "30" and similar terms in relation to auto rims or wheels. At www.cheap-wheels-n-rims.com, there is an article entitled "Give your auto the right look with custom car rims and aftermarket wheels." The article reports that the "hottest of today's custom rims are getting bigger and bigger. Aftermarket wheels range in sizes from 14 inches right up to 30 inches! … The trend of aftermarket wheels is getting bigger every single summer." At www.unverferth.com, "rims are available in 24-, 26-, 28-, and 30-inch diameters." See also http://s87151159onlinehome.us/gallery/Cars/30inch ("blingin 30 inch rims").

The examining attorney even retrieved a vignette from an electronic bulletin board conversation concerning Acura vehicles in December 2003.[3] The conversation opened with the subject:

30" rims!!

The writer displayed a photo of a car with large wheels and reported: "Yesterday while ridin with a friend I saw two cars roll by ridin on HUGE rims. We waved at the drivers

---

[3] We emphasize that our decision does not rest on the use of the term "30's" or "30s" on this bulletin board. We do point to it as an example of the natural progression of language that would be used to refer to the size of rims as they become larger.

and they told us, yep, 30's.  I had my phone on me so I took a few pics, remember it's a phone before it is a camera, but this will give u an idea of what they look like."  The first response to this message was:  "I didn't know they had 30s out, are those custom?"

The examining attorney also submitted some additional evidence to show that rims are often referred to by the number that describes their diameter in plural form. www.acuramdx.org ("with the never ending quest to go bigger with 23's, 24's, and even 26's and 28's – the prices of 20's are comparatively cheaper than ever"); www.wnba.com ("I would get Stacy some twenty-fours (rims) for her new car") and www.dodgedakotas.com ("chrome twentys"). Furthermore, the lyrics of several songs show the use of a plural number to refer to the size of the wheels on the vehicle.  See, e.g., www.anysonglyrics.com (50 Cent, *True Loyalty*, "Look at them twenty-fours diamonds spin"); www.sing365.com (Insane Clown Posse, *24' on a '84,* "24's on my 84 Regal.  I'm riding down your block with 2 Desert Eagles"); and www.thelyricarchive.com (Big Tymers, *Still Fly*, "Cruisin through the parking lot on twenty fours (Coming Through The Hood On'Em Twenty Fo's) Cadillac Escalade with the chromed out nose).

The above evidence leads us to conclude that car wheel rims are available in a variety of sizes and it is apparent that the size of the rims has been getting larger. The wheels are often referred to simply by the number that describes the size of the rims, e.g., "20's," "22's," and "twenty fours." Rims have now increased in size to the extent that rims with a diameter of 30 inches are now available. The term "thirty" is "a cardinal number, 10 times 3." *The Random House Dictionary of the English Language (unabridged)* (2d ed. 1987).[4] The same dictionary identifies the plural of this word as "thirties." The terms "30," "30's," "thirty," and "thirties" all describe car wheel rims that are 30 inches in diameter.

The next question then is whether applicant's mark "3-O'S" would similarly describe car wheel rims that are 30 inches in diameter. Inasmuch as the term "30's" would describe car wheel rims that are thirty inches in diameter, the basic question in this case is whether the addition of the hyphen converts this descriptive term into a non-descriptive term. We begin by noting that slight variations in spelling of marks from their traditional

---

[4] We take judicial notice of this definition. University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., 213 USPQ 594, 596 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

spelling does not change the meaning of the term if the underlying term is itself descriptive. The Supreme Court has held that:

> The word, therefore is descriptive, not indicative of the origin or ownership of the goods; and being of that quality, we cannot admit that it loses such quality and becomes arbitrary by being misspelled. Bad orthography has not yet become so rare or so easily detected as to make a word the arbitrary sign of something else than its conventional meaning….

Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 455 (1911). See also Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315 (1938) (NU-ENAMEL; NU held equivalent of "new"); In re Quik-Print Copy Shops, 616 F.2d 523, 205 USPQ 505, 507 n.9 (CCPA 1980) (QUIK-PRINT held descriptive; "There is no legally significant difference here between 'quik' and 'quick'"); Fleetwood Co. v. Mende, 298 F.2d 797, 132 USPQ 458, 460 (CCPA 1962) ("TINTZ [is] a phonetic spelling of 'tints'"); King-Kup Candies, Inc. v. King Candy Co., 288 F.2d 944, 129 USPQ 272, 273 (CCPA 1961) ("It is clear, therefore, that the syllable 'Kup,' which is the full equivalent of the word 'cup,' is descriptive); Andrew J. McFarland, Inc. v. Montgomery Ward & Co., 164 F.2d 603, 76 USPQ 97, 99 (CCPA 1947)(KWIXTART merely descriptive for electric storage batteries); In re Organik Technologies Inc., 41 USPQ2d 1690, 1694 (TTAB 1997) (ORGANIK "is the phonetic equivalent of the term

8

'organic'"); and Hi-Shear Corp. v. National Automotive Parts Association, 152 USPQ 341, 343 (TTAB 1966) (HI-TORQUE "is the phonetic equivalent of the words 'HIGH TORQUE'"). Even if there was no evidence that such terms as NU, QUIK, KWIK, KUP, or ORGANIK were used, it would not mean that they were not descriptive.

Second, the addition of punctuation marks to a descriptive term would not ordinarily change the term into a non-descriptive one. In re Samuel Moore & Co., 195 USPQ 237, 240 (TTAB 1977) ("Applicant has not cited nor have we found any case where it was held that a common punctuation mark, such as an exclamation point, was sufficient to elevate an otherwise merely descriptive term to the status of a registrable trademark. We do not do so in this case"). See also In re S.D. Fabrics, Inc., 223 USPQ 54, 55 (TTAB 1984) ("Aside therefrom, we are not persuaded that the design features of applicant's mark, namely, the filling in of portions of some of the letters in the mark and the separation of the two words of the mark with a conventional punctuation mark, are so distinctive as to create a commercial impression separate and apart from the unregistrable components").

Third, the addition of hyphens to marks, as in this case, has not been successful in changing the descriptive

9

nature of the term. In re Wyandotte Chemicals Corp., 156 USPQ 100, 100 (TTAB 1967) ("It is equally true that a descriptive term is not made arbitrary by hyphenating or misspelling it"). See also Weiss Noodle Co., 129 USPQ at 413 (Term "HA-LUSH-KA" held to be the generic equivalent of the Hungarian word "haluska"); American Druggist Syndicate v. United States Industrial Alcohol Co., 2 F.2d 942, 943 (D.C. Cir. 1924) ("'Al-Kol' is merely a phonetic or misspelling of the word 'alcohol,' and is descriptive of the goods").

In this case, applicant's mark, 3-O'S, consists of the number 3, a hyphen, the letter "O," an apostrophe, and the letter "S." We note that the "O" can be considered to be the letter "O" or the representation of the number "zero."[5] The letter "O" is defined as: "The 15th letter of the English alphabet" and "A zero." *The American Heritage Dictionary Student Dictionary* (1988).[6] Therefore, the term, "3-O'S," when it is used on car wheels, would likely be pronounced as "three ohs" and signify the number 30s. While in the abstract, the term may have several meanings,[7]

---

[5] Indeed, some purchasers may find it difficult to distinguish between the letter "O" and the number "0."
[6] We take judicial notice of this definition also.
[7] We find applicant's argument (Brief at 4) that, when purchasers are looking at car wheel rims, they would somehow be reminded of "three circles, or three 'O's,' which can refer to dragsters or funny cars with three wheels" particularly unpersuasive.

when one is a prospective purchaser of car wheel rims, the term "3-O'S" would immediately describe a characteristic or feature of the goods, i.e., that they are 30 inches in diameter.

Applicant argues that its term is "an abbreviation, contraction, foreshortening or whimsical alternative spelling for tire rims equal to or greater than thirty inches in diameter." Brief at 3. If a misspelling "involves more than simply a misspelling of a descriptive or generic word," it may not be merely descriptive. In re Grand Metropolitan Foodservices Inc., 30 USPQ2d 1974, 1975 (TTAB 1994) (Applicant's "MufFuns" (stylized) mark has a different commercial impression than the generic term "muffin"). However, we see nothing whimsical about the term "3-O'S." The term is simply another way of saying "thirty inch rims." It is not so much an abbreviation as it is what Judge Rich referred to as follows:

> [T]he users of language have a universal habit of shortening full names -- from haste or laziness or just economy of words. Examples are: automobile to auto, telephone to phone, necktie to tie, gasoline service station to gas station. I regard it as inevitable that a gas monitoring badge will be called a gas badge…

Abcor, 200 USPQ at 219 (Rich, J. concurring).

Regarding applicant's allegations (Brief at 6) that the "evidence of record is clearly insufficient," we simply

disagree.  The term "30" obviously is exactly descriptive of wheel rims having a thirty-inch diameter.  There is no difference between using the Arabic numeral "30" or the word "thirty."  Both mean exactly the same thing, the number 30.  Applicant's identification of goods includes wheels of thirty-inch diameter.[8]  The evidence demonstrates that wheels are frequently referred to by the plural number of their size.  We have no doubt that if prospective purchasers of car rims were to encounter the term "3-O'S" on thirty-inch car rims, they would immediately understand that the term is merely descriptive of these goods.

Decision:  The examining attorney's refusal to register applicant's mark on the ground that it is merely descriptive of the identified goods is affirmed.

---

[8] There is no argument by applicant in this case that the term "thirty" would not describe its wheels.  If that were the case, there would then be a question of whether the mark was deceptively misdescriptive of the goods.