# United States Court of Appeals for the Federal Circuit

---

**JUICE GENERATION, INC.,**
*Appellant*

v.

**GS ENTERPRISES LLC,**
*Appellee*

---

2014-1853

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91206450.

---

Decided: July 20, 2015

---

NIGAMNARAYAN ACHARYA, Seyfarth Shaw LLP, Atlanta, GA, argued for appellant. Also represented by MICHAEL H. BANIAK, Chicago, IL.

JUSTEN S. BARKS, Craft Chu PLLC, Houston, TX, argued for appellee. Also represented by LOREN JEREMY CRAFT.

---

Before NEWMAN, REYNA, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Juice Generation applied to the Patent and Trademark Office to register a mark consisting of "PEACE LOVE AND JUICE" and a design for use with its juice bar services. GS Enterprises opposed the application on the ground that Juice Generation's mark was likely to cause confusion with its own family of marks, all of which contain the phrase "PEACE & LOVE" and are registered for use with restaurant services. The Trademark Trial and Appeal Board sustained the opposition and refused to register Juice Generation's mark. We conclude that the Board did not adequately assess the weakness of GS's marks and did not properly consider the three-word combination of Juice Generation's mark as a whole in comparing it to the two-word combination in GS's marks. We therefore remand for further proceedings.

## BACKGROUND

Juice Generation operates a chain of juice bars in the New York City area. Under 15 U.S.C. § 1051(b), it applied to the PTO in 2012 to register the following mark on the principal register in connection with "[j]uice bar services":



U.S. Trademark Application Serial No. 85549820 (filed Feb. 22, 2012). The application disclaimed the word "juice." *Id.*

GS owns four related registrations, each incorporating the phrase "PEACE & LOVE," all on the principal register, and all in connection with "[r]estaurant services": "P & L PEACE & LOVE," Registration No. 3291917; "ALL YOU NEED IS PEACE & LOVE," Registration No. 3291918; "PEACE & LOVE," Registration No. 3713785; "P & L PEACE & LOVE NEW YORK," Registration No. 3885867 (disclaiming "New York"). Two of the marks also include designs:

 

GS opposed Juice Generation's application under 15 U.S.C. § 1052(d), arguing that Juice Generation's "PEACE LOVE AND JUICE" mark created a likelihood of confusion with GS's family of marks.

The Trademark Trial and Appeal Board evaluated the existence of a likelihood of confusion by following our predecessor court's non-exhaustive listing of thirteen considerations in *In re E. I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973). The Board determined that the similarity of the marks, the similarity of the services, the similarity of the trade channels, and the similarity of the buyers and purchasing conditions all pointed to a likelihood of confusion, whereas the number

of similar marks in use was neutral or at most pointed slightly against a likelihood of confusion. The Board also considered that Juice Generation had been using its "PEACE LOVE AND JUICE" mark for several years and yet the record contained no evidence of actual confusion, but the Board found that, on the facts, "[t]he lack of evidence of actual confusion carries little weight" on the question of *likely* confusion, because there was no evidence "to establish that the parties' use of their respective marks has been at such a level that there have been meaningful opportunities for actual confusion to have occurred among purchasers." *GS Enters. LLC v. Juice Generation, Inc.*, No. 91206450, 2014 WL 2997639, at *8 (T.T.A.B. June 18, 2014).

When comparing Juice Generation's mark to GS's marks, the Board first identified the words of the mark, rather than its design, as the dominant feature, and then further zeroed in on "PEACE LOVE" as "[t]he dominant portion of [Juice Generation's] mark." *Id.* at *5. It concluded that "[t]he dominant portion of [Juice Generation's] mark, PEACE LOVE, and the entirety of [GS's] mark PEACE & LOVE are virtually identical in appearance and sound." *Id.* Then, recognizing that it "must consider [Juice Generation's] mark in its entirety, not merely the dominant portion," the Board declared that "the additional disclaimed word 'JUICE' and nondistinctive design features do not serve to sufficiently distinguish [Juice Generation's] mark from [GS's] standard character mark PEACE & LOVE." *Id.* at *6. The Board observed that GS's standard character mark was not limited by font, size, or color or to horizontal or vertical display, but it did not elaborate on its consideration of the three-word combination "PEACE LOVE AND JUICE" in its entirety. *Id.* at *5–6.

The Board also considered the testimony of Juice Generation's founder regarding third-party uses of similar marks—"Peace Love and Pizza," "Peace Love and Pop-

corn," and more in a similar vein.[1]  *Id.* at *6.  But the Board determined that this evidence did not enable it "to find that customers have become conditioned to recognize that other entities use PEACE AND LOVE marks for similar services," which would have cut against a likelihood of confusion.  *Id.* at *7.

Finally, the Board reviewed statements made by GS during the prosecution of its own marks, which might have demonstrated GS's own belief that the words "peace" and "love" lack distinctiveness.  *Id.*  But the Board gave those statements little weight.  *Id.*

On balance, the Board decided, the *DuPont* factors favored the conclusion that "consumers familiar with [GS's] 'restaurant services' rendered under the mark PEACE & LOVE would be likely to mistakenly believe,

---

[1]     Examples of registered or unregistered marks in the record include the following: "PEACE LOVE NOODLES HE AI MIAN," "PEACE LOVE AND PIZZA," "PEACE LOVE YOGURT," "PEACE, LOVE & ICE CREAM," "PEACE, LOVE AND LITTLE DONUTS," "PEACE.LOVE.DÖNER," "PEACE, LOVE & BEER," "PEACE, LOVE, AND CHOCOLATE," "PEACE LOVE & OATS," "PEACE. LOVE. & GOOD FOOD.," "PEACE, LOVE AND FRENCH FRIES," "PEACE, LOVE & CUPCAKES," "PEACE LOVE BURRITOS," "PEACE, LOVE, AND BURGERS," "PEACE · LOVE · PANCAKES," "PEACE LOVE & BARBECUE," "PEACE, LOVE & CRUNCH," "PEACE LOVE GRANOLA," "PEACE, LOVE AND PINOT," "PEACE. LOVE. TREATS.," "PEACE, LOVE, AND CHOPS," "PEACE, LOVE, AND HOT DOGS," "PEACE. LOVE. PASTA.," "PEECE LUV CHIKIN," "PEACE, LOVE & CHEESECAKE," "PEACE LOVE AND APPLE PIE." Eight of those marks were particularly featured in testimony by Juice Generation's founder.

upon encountering [Juice Generation's] mark PEACE LOVE AND JUICE and design for 'juice bar services,' that the services originated from or are associated with or sponsored by the same entity." *Id.* at *9. The Board therefore sustained the opposition and refused to register Juice Generation's mark.

Juice Generation appeals that decision. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

DISCUSSION

The Board's ultimate conclusion regarding a likelihood of confusion—which is a ground for Board refusal to register a mark, 15 U.S.C. § 1052(d)—is a question of law that we review de novo. *StonCor Grp., Inc. v. Specialty Coatings, Inc.*, 759 F.3d 1327, 1331 (Fed. Cir. 2014). This legal conclusion is based on underlying factual findings, which we review for substantial evidence. *Id.* "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

Likelihood of confusion must be analyzed on a case-by-case basis, considering all evidence actually relevant to that inquiry, as stated by *DuPont*'s final, catch-all item in its list of potentially relevant considerations. 476 F.2d at 1361; *see also Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1366 (Fed. Cir. 2012) (*DuPont*'s specific items are not exhaustive of inquiry); *M2 Software, Inc. v. M2 Commc'ns, Inc.*, 450 F.3d 1378, 1382 (Fed. Cir. 2006) (even within *DuPont* list, only factors that are "relevant and of record" need be considered). In this case, we agree with Juice Generation that the Board inadequately assessed and weighed the strength or weakness of GS's marks—a consideration that is connected to "the number and nature of similar marks in use on similar goods," identified in *DuPont*, 476 F.2d at 1361, and is in any event probative of the likelihood of confusion—and

gave inadequate consideration to Juice Generation's three-word combination in its "entiret[y]," *id.*, as distinct from GS's two-word combination. Both errors are significant given the evidence in this case, which includes a substantial number of third-party marks incorporating the phrase "peace and love" in connection with restaurant services or food products, the bulk of which are three-word phrases much like Juice Generation's mark.

A

As the Board understood, sufficient evidence of third-party use of similar marks can "show that customers . . . 'have been educated to distinguish between different . . . marks on the basis of minute distinctions.'" 2 McCarthy on Trademarks and Unfair Competition § 11:88 (4th ed. 2015) (quoting *Standard Brands, Inc. v. RJR Foods, Inc.*, 192 U.S.P.Q. 383 (T.T.A.B. 1976)). More broadly, evidence of third-party use bears on the strength or weakness of an opposer's mark. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1373 (Fed. Cir. 2005). The weaker an opposer's mark, the closer an applicant's mark can come without causing a likelihood of confusion and thereby invading what amounts to its comparatively narrower range of protection. *Id.* ("Evidence of third-party use of similar marks on similar goods is relevant to show that a mark is relatively weak and entitled to only a narrow scope of protection."); *In re Coors Brewing Co.*, 343 F.3d 1340, 1345 (Fed. Cir. 2003) (third-party use can establish that mark is not strong); *Fleetwood Co. v. Mende*, 298 F.2d 797, 799 (CCPA 1962) ("Where a party uses a weak mark, his competitors may come closer to his mark than would be the case with a strong mark without violating his rights.").

Although Juice Generation introduced evidence of a fair number of third-party uses of marks containing "peace" and "love" followed by a third, product-identifying

term, *see* note 1, *supra*, the Board discounted the evidence because there were no "specifics regarding the extent of sales or promotional efforts surrounding the third-party marks and, thus, what impact, if any, these uses have made in the minds of the purchasing public." *GS Enters.*, 2014 WL 2997639, at *7. Accordingly, the Board determined it could not "find that customers have become conditioned to recognize that other entities use PEACE AND LOVE marks for similar services." *Id.* The Board's treatment of the evidence of third-party marks, we conclude, does not adequately account for the apparent force of that evidence.

The "specifics" as to the extent and impact of use of the third parties' marks may not have been proven, but in the circumstances here, Juice Generation's evidence is nonetheless powerful on its face. The fact that a considerable number of third parties use similar marks was shown in uncontradicted testimony. In addition, "[a] real evidentiary value of third party *registrations* per se is to show the sense in which . . . a mark is used in ordinary parlance." 2 McCarthy on Trademarks and Unfair Competition § 11:90 (4th ed. 2015) (emphasis added). "Third party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." *Id.*; *see Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 917 (CCPA 1976) (even if "there is no evidence of actual use" of "third-party registrations," such registrations "may be given some weight to show the meaning of a mark in the same way that dictionaries are used"). Marks that are descriptive or highly suggestive are entitled to a narrower scope of protection, *i.e.*, are less likely to generate confusion over source identification, than their more fanciful counterparts. *See, e.g.*, *Nat'l Data Corp. v. Computer Sys. Eng'g, Inc.*, 940 F.2d 676, at *2 (Fed. Cir. 1991) (un-

published); *Drackett Co. v. H. Kohnstamm & Co.*, 404 F.2d 1399, 1400 (CCPA 1969) ("The scope of protection afforded such highly suggestive marks is necessarily narrow and confusion is not likely to result from the use of two marks carrying the same suggestion as to the use of closely similar goods.").

In the present case, the Board overlooked this aspect of the inquiry by insisting on specifics as to the third-party use. It never inquired whether and to what degree the extensive evidence of third-party use *and registrations* indicates that the phrase PEACE & LOVE carries a suggestive or descriptive connotation in the food service industry, and is weak for that reason. *See*, *e.g.*, *Anthony's Pizza & Pasta Int'l, Inc.*, 95 U.S.P.Q.2d 1271, at *8 (T.T.A.B. Nov. 10, 2009) ("The testimony, third-party registrations, and telephone listings are sufficient to show that the name 'Anthony's' has been extensively adopted, registered and used as a trademark for restaurant services, in particular for Italian restaurants and pizzerias, and therefore that 'Anthony's' has a significance in this industry. Thus, the evidence corroborates the testimony that 'Anthony's' suggests an Italian restaurant or even a New York style Italian restaurant. As a result, a mark comprising, in whole or in part, the name 'Anthony's' in connection with restaurant services should be given a restricted scope of protection."). A proper likelihood-of-confusion inquiry requires such consideration—which is not barred by the fact that GS's marks are registered. *See Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 92 (4th Cir. 1997).

Such consideration was particularly important in this case because of statements GS made to the PTO in successfully applying for registration of one of its marks. An examiner initially denied registration of GS's "PEACE & LOVE" mark due to a likelihood of confusion with the mark "PEECE LUV CHIKIN." *See* J.A. 3012–13. GS responded that its mark conveyed a "different overall

impression" because its "mark, as applied to restaurant services, elicits in the consumer an overall commercial impression of a restaurant that has a theme and atmosphere of the counterculture prevalent in the 1960's and 1970's." J.A. 3013. Although estoppel based on prosecution of an application has played a more limited role for trademarks than for patents, *see Anthony's*, 95 U.S.P.Q.2d 1271, at \*12, *aff'd*, 415 F. App'x 222 (Fed. Cir. 2010) (not mentioning estoppel); *see also* 6 McCarthy on Trademarks and Unfair Competition § 32:111 (4th ed. 2015), we have recognized that such comments have significance as "facts 'illuminative of shade and tone in the total picture confronting the decision maker,'" *GS Enters.*, 2014 WL 2997639, at \*7 (quoting *Interstate Brands Corp. v. Celestial Seasonings, Inc.*, 576 F.2d 926, 929 (CCPA 1978)); *see also Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1322 (Fed. Cir. 2014). Other courts have afforded even greater weight to such statements. *E.g., Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 476 (3d Cir. 2005). GS's comments therefore support Juice Generation's argument that "PEACE & LOVE" is suggestive or descriptive.

For the foregoing reasons, we conclude that the Board gave inadequate consideration to the strength or weakness of GS's marks. *See Elec. Design & Sales, Inc. v. Elec. Data Sys. Corp.*, 954 F.2d 713, 718 (Fed. Cir. 1992) (noting the Board's duty to consider all evidence when evaluating the likelihood of confusion between marks). "[T]he strength of a mark is not a binary factor." *In re Coors*, 343 F.3d at 1345. It "varies along a spectrum from very strong to very weak." *Id.* The Board here did not conduct an analysis of all evidence relevant to where on that spectrum GS's marks fall and the resulting effect on the overall likelihood-of-confusion determination. We remand for the Board to undertake this inquiry in the first instance. *In re Nett Designs, Inc.*, 236 F.3d 1339, 1341 (Fed. Cir. 2001) ("Placement of a term on the fanciful-

suggestive-descriptive-generic continuum is a question of fact.").

## B

Marks are compared along the axes of their "appearance, sound, connotation and commercial impression." *Dupont*, 476 F.2d at 1361. "The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail." *Estate of P.D. Beckwith, Inc., v. Comm'r of Patents*, 252 U.S. 538, 545–46 (1920). Our predecessor court explained that "a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining likelihood of confusion." *Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 1007 (CCPA 1981). That does not preclude consideration of components of a mark; it merely requires heeding the common-sense fact that the message of a whole phrase may well not be adequately captured by a dissection and recombination. *See FCC v. AT&T Inc.*, 562 U.S. 397, 406 (2011) (making similar point about "personal privacy"). It is the mark in its "entiret[y]" that must be assessed. *DuPont*, 476 F.2d at 1361.

The Board paid insufficient heed to that important principle in analyzing the three-word combination "PEACE LOVE AND JUICE." The Board declared that "PEACE LOVE" is the "dominant" portion of that combination, compared that portion to GS's "PEACE & LOVE" phrase, found that they are "virtually identical," and then simply added that "the additional disclaimed word 'JUICE' . . . do[es] not serve to sufficiently distinguish" Juice Generation's mark from GS's marks. *GS Enters.*, 2014 WL 2997639, at *5–6. That analysis is inadequate. It does not display any consideration of how the three-word phrase in Juice Generation's mark may convey a distinct meaning—including by having different connotations in consumers' minds—from the two-word phrase

used by GS.  *Cf. Packard Press, Inc. v. Hewlett-Packard Co.*, 227 F.3d 1352, 1357 (Fed. Cir. 2000) ("To be sure, the Board stated that it had considered the marks in their entireties.  But this statement, absent further explanation of the agency's reasoning, is simply insufficient for proper review of PTO factfinding." (citation omitted)).

While the Board may properly afford more or less weight to particular components of a mark for appropriate reasons, it must still view the mark as a whole.  *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985) ("[T]here is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties.").  The Board did not err in giving less emphasis to the word JUICE when it noted that the term is generic.  *GS Enters.*, 2014 WL 2997639, at *5.  But the Board did not set forth an analysis showing that it avoided the error of giving no significance to the term, which is impermissible notwithstanding that the term is generic and disclaimed.  *See Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 851 (Fed. Cir. 1992) (Board erred by giving *no weight* to generic term); *see also Shen Mfg. Co. v. Ritz Hotel, Ltd.*, 393 F.3d 1238, 1243 (Fed. Cir. 2004) ("The disclaimed elements of a mark, however, are relevant to the assessment of similarity.  This is so because confusion is evaluated from the perspective of the purchasing public, which is not aware that certain words or phrases have been disclaimed." (citation omitted)); *Nat'l Data Corp.*, 753 F.2d at 1059 ("The technicality of a disclaimer in National's application to register its mark has no legal effect on the issue of likelihood of confusion.  The public is unaware of what words have been disclaimed during prosecution of the trademark application at the PTO." (footnote omitted)).  More generally, we see no analysis sufficient to demonstrate consideration of the mark as a whole.

A remand is needed for the Board to undertake that consideration, along with consideration of the evidence of third-party use. We cannot deem the Board's errors harmless. The remand analysis might well call for an answer to the overall likelihood-of-confusion question different from the answer the Board gave in the decision on review.

CONCLUSION

For the foregoing reasons, we vacate the Board's decision that there is a likelihood of confusion between GS's and Juice Generation's marks, and we remand for further proceedings consistent with this opinion.

Costs awarded to appellant.

**VACATED AND REMANDED**